**No. 25-3101**

_____

# In the United States Court of Appeals
**FOR THE NINTH CIRCUIT**

STATE OF HAWAI'I, EX REL. ANNE
E. LOPEZ, ATTORNEY GENERAL,
*Plaintiff-Appellee*,

V.

EXPRESS SCRIPTS, INC.,
*Defendant-Appellant*,

CAREMARKPCS HEALTH, L.L.C.;
OPTUMRX, INC.,
*Defendants.*

_____

On Appeal from the United States District Court for
District of Hawai'i
Case No. 1:23-cv-00464-LEK-RT, Hon. Leslie E. Kobayashi

**DEFENDANT-APPELLANT EXPRESS SCRIPTS, INC.'S
REPLY BRIEF**

Jason R. Scherr
Douglas A. Hastings
Lindsey T. Levy
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000

*Attorneys for Defendant-Appellant Express Scripts, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................3

ARGUMENT ..........................................................................................................7

I.    THE STATE CANNOT DISENTANGLE ITS CLAIMS FROM EXPRESS SCRIPTS' CONDUCT ACTING UNDER THE FEDERAL GOVERNMENT. .............................................................7

        A.    The State's Waiver is Circular and Ambiguous.................................7

        B.    The State's Waiver Does Not Disclaim the Relationship between WAC and Express Scripts' Federal Work. ...........................9

        C.    The State's Waiver Fails to Distinguish Federal and Non-Federal Relief. ..............................................................................12

        D.    The States's Allegations and Disclaimer are Like Those in Other Drug Pricing Cases, not the Opioids Litigation. ......................14

        E.    The State's Waiver in Its Second Amended Complaint Is Irrelevant Here and Is Also Insufficient.............................................19

II.    THE DISTRICT COURT'S NARROW "CAUSAL NEXUS" REQUIREMENT IS INCONSISTENT WITH THE FEDERAL-OFFICER REMOVAL STATUTE..........................................20

CONCLUSION.....................................................................................................24

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS............................25

ii

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Batchelor v. Am. Optical Corp.*,
   185 F. Supp. 3d 1358 (S.D. Fla. 2016) ............................................................... 7

*Bio-Lab, Inc. v. United States*,
   776 F. Supp. 3d 1315 (Ct. Int'l Trade 2025) ..................................................... 8

*California by & through Harrison v. Express Scripts, Inc.*,
   154 F.4th 1069 (9th Cir. 2025) ................................................................... *passim*

*California v. Caremark*,
   2024 WL 3770326 (9th Cir. Aug. 13, 2024) ............................................... *passim*

*Corley v. Long-Lewis, Inc.*,
   688 F. Supp. 2d 1315 (N.D. Ala. 2010) ............................................................. 8

*DeFiore v. SOC LLC*,
   85 F.4th 546 (9th Cir. 2023) ................................................................... 21, 23

*Gov't of Puerto Rico v. Express Scripts, Inc.*,
   119 F.4th 174 (1st Cir. 2024) .......................................................... 8, 15, 16

*Jefferson Cnty. v. Acker*,
   527 U.S. 423 (1999) ............................................................................. 18

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) ............................................................... 19

*Sawyer v. Foster Wheeler LLC*,
   860 F.3d 249 (4th Cir. 2017) ............................................................... 21

*W. Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*,
   140 F.4th 188 (4th Cir. 2025) .............................................. 15, 16, 18

*Willingham v. Morgan*,
   395 U.S. 402 (1969) ..................................................................... 12, 19

**STATUTES**

28 U.S.C.
§ 1442(a)(1) ......................................................................................8, 21

Haw. Rev. Stat. § 480-3.1 ...........................................................................14

**OTHER AUTHORITIES**

Merriam-Webster Online Dictionary (last visited Dec. 23, 2025),
https://www.merriam-webster.com/dictionary/e.g ................................................9

## **INTRODUCTION**

The State's claims in this case inherently implicate Express Scripts' work acting under the federal agency that engaged it for the purpose of discharging part of that agency's obligations. Inherent in its work for the Department of Defense's TRICARE program is Express Scripts' obligation to engage in the same pharmacy benefit administration that the State challenges here—specifying covered medications at varying levels of preference and incentive and stratifying plan members' contributions to the cost of different drugs based on the government's policy choices. The State's disclaimer is not enough to sever that nexus because it does not remove the entanglement between Express Scripts' federal conduct and the State's core allegations that the Wholesale Acquisition Cost ("WAC") of prescription drugs is too high.

In concluding otherwise, the district court committed several reversible errors. First, it failed to conduct the removal inquiry on the basis of Express Scripts' removal theory rather than the State's theory, instead inaccurately limiting its assessment to the "relief" sought (as distinct from the conduct alleged). Second, even its constrained assessment of the State's effort to disclaim federal relief refused to consider the ways that relief based on Express Scripts' non-federal work is inextricably intertwined with its federal work. And third, the district court applied an improperly narrow causal nexus standard, further skewing its analysis.

5

The State's brief repeats those same errors with little elaboration. Like the district court, the State asserts that Express Scripts has waived any removal theory other than one about *relief*, despite Express Scripts' removal notice clearly describing the connections between its *conduct* under a federal officer and manufacturers' WAC. Also like the district court, the State does not meaningfully address the impossibility of extracting relief based on federal conduct from any relief based on non-federal conduct. The State's proposal that Express Scripts simply not produce information related to federal contracts in discovery does nothing to determine the portion of any claimed "inflation" attributable to Express Scripts' federal work. And the State doubles down on asserting that the district court's narrow causal nexus standard was correct, even as it simultaneously argues that the district court didn't apply such a standard.

The State also attempts to distinguish *California v. Caremark* and two other recent court of appeals decisions holding that prescription drug pricing cases were removable to federal court. But its main purported distinction—that the district court in those cases failed to credit defendants' removal theory—only underscores the similarity. That is *exactly* what the district court did here when evaluating Express Scripts' grounds for removal.

Finally, the State emphasizes this Court's decision in *California by & through Harrison v. Express Scripts, Inc.* (hereinafter "*Harrison*"). But that decision,

6

involving an entirely different subject matter (allegations that Express Scripts had contributed to opioid abuse in California), is no basis to depart from the holdings of the three recent drug pricing cases. The *Harrison* court itself explicitly distinguished drug pricing cases, which it acknowledged involved "indivisible conduct" under a federal officer. And the Supreme Court's ongoing review of the causal nexus standard in *Chevron USA v. Plaquemines Parish* may well invalidate the *Harrison* ruling.

For those reasons and as discussed below, the Court should reverse the district court's order.

## ARGUMENT

**I. THE STATE CANNOT DISENTANGLE ITS CLAIMS FROM EXPRESS SCRIPTS' CONDUCT ACTING UNDER THE FEDERAL GOVERNMENT.**

### A. The State's Waiver is Circular and Ambiguous

In its First Amended Complaint, the state disclaims any "relief relating to any federal program (e.g., Medicaid, Medicare, TRICARE, FEHBA) or any contract related to a federal program." State Br. 1–2. The State provides no persuasive explanation for why that is an anything more than an attempt "to waive *all* federal claims based on boilerplate language." *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1363 (S.D. Fla. 2016) (collecting cases).

The State first contends its waiver "specifically addressed the State's claims in the instant litigation rather than broadly disclaiming any and all federal claims in

the universe." State Br. at 19. That is not and cannot be the standard for when a waiver defeats federal officer removal. Otherwise, any circular waiver could be propped up simply by adding the phrase "the claims in this case." Whether a plaintiff is waiving hypothetical claims not asserted in its complaint makes no difference; what matters is whether the disclaimer makes clear which claims in the complaint are waived and which are not. Courts reject disclaimers that fail to make that distinction because otherwise it "defeat[s] the purpose [of] § 1442(a)(1) as it would force federal contractors to prove in state court that they were acting under the direction of the government." *Corley v. Long-Lewis, Inc.,* 688 F. Supp. 2d 1315, 1335 (N.D. Ala. 2010); *see also Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 191 (1st Cir. 2024) (concluding that crediting a similar disclaimer in a similar suit against PBMs "would undercut § 1442(a)(1)'s requirement that federal courts determine whether a defendant acted under a federal officer's authority").

Here, the only way in which the State's disclaimer relates to claims in this case is that it includes an "e.g." followed by the examples "Medicaid, Medicare, TRICARE [and] FEHBA." Such a waiver is not even limited to the claims in this case, because "e.g.," *exempli gratia*, necessarily implies a non-exclusive list. *Bio-Lab, Inc. v. United States*, 776 F. Supp. 3d 1315, 1336 (Ct. Int'l Trade 2025) (finding that "use of '*e.g.*' suggests that the list is illustrative and not exhaustive"); *E.g.*, Merriam-Webster Online Dictionary (last visited Dec. 23, 2025),

https://www.merriam-webster.com/dictionary/e.g. (defining "e.g." as "for example"). But even taking at face value the State's assertion that its waiver was limited to this case, that is not enough. The State's waiver does nothing to identify which specific allegations in the complaint are being disclaimed, much less which claims relate to Express Scripts' conduct under a federal officer.

### B. The State's Waiver Does Not Disclaim the Relationship between WAC and Express Scripts' Federal Work.

The State next contends that its disclaimer was effective on the premise that Express Scripts' sole basis for removal was "an alleged portion of *the State's relief* that would be related to TRICARE beneficiaries." State Br. 19 (emphasis added). The State—like the district court—conveniently ignores a major portion of Express Scripts' removal grounds. A key component of Express Scripts' removal theory was that the State's allegations center on purportedly unlawful inflation of manufacturers' list prices—the WAC—which serves as a benchmark for Express Scripts' performance under the TRICARE engagement. AOB 24 (citing 2-ER-263–64). Express Scripts explained that DoD requires Express Scripts to use DoD's formulary, which in turn means that Express Scripts loses all discretion concerning coverage for a range of medications for which manufacturers set the WAC. AOB 25 (citing 2-ER-265–66).

The State's waiver of "relief" related to federal programs does nothing to sever the relationships between those programs and Express Scripts' work under

9

TRICARE.  If the State were to obtain relief in this case based ostensibly on Express Scripts' "non-federal" work, its relief still would affect the WAC, and that would directly impact Express Scripts' performance of its work for the federal government.

The State's characterization of these points as "re-writing" Express Scripts' removal argument, State Br. 23, is demonstrably incorrect—they are clearly raised in Express Scripts' notice of removal, 2-ER-262–63 ("[I]ncreases of the WAC of any drug are, at a minimum, associated with Express Scripts' work for TRICARE . . . Express Scripts adjudicates claims for TRICARE beneficiaries based off a price the federal government negotiated from brand name drug manufacturers tied to WAC"); 2-ER-263 ("The DoD also provides incentives to Express Scripts if it is able to negotiate with members of its retail pharmacy network under the TRICARE contract certain percentage discounts off the WAC of a particular drug").  The State's argument cites to the *district court's* assertion that Express Scripts' removal theory was only about relief, State Br. 19–20, rather than citing to Express Scripts' actual removal theory, thereby underscoring that the district court erred.  The district court's disregard of these arguments failed to "credit [Express Scripts'] theory of the case" and was reversible error.  *California v. Caremark*, 2024 WL 3770326 at *1 (9th Cir. Aug. 13, 2024) (Ikuta, J., concurring).

The State also belatedly attempts to backfill a rationale for the district court by asserting without support that "the artificially-inflated WAC is independent of

Express Scripts' work for TRICARE—i.e., that work has no effect on the WAC." State Br. 25. The State's new rebuttal is wrong in two ways.

First, Express Scripts' federal work is part of the overall system of providing pharmacy benefits, which manufacturers consider as a whole when they set the WAC. Express Scripts' work as part of the TRICARE program involves administering pharmacy benefits according to formularies that determinate what drugs are eligible for benefits and in what amounts, which is part of the conduct that the State calls a "scheme" to unlawfully inflate drug prices. *See* 2-ER-123, 134–38. So, the State's allegations that Express Scripts has inflated the WAC inherently depend in part on Express Scripts' federal work.

Second, the converse also is true: changes to the WAC affect Express Scripts' federal work. The ultimate relief that the State seeks is a decrease in WAC, and therefore a system with lower prices and correspondingly lower rebates. 2-ER-79. Manufacturers do not set different WACs for different health plans; they set a single WAC which is then incorporated into Express Scripts' TRICARE contracts regardless of whether the State does or does not seek "relief" relating to any federal program. *See* 2-ER-262–63. If the State obtains the relief sought, it would result in Express Scripts' performance under its TRICARE contract being measured based on a different WAC, and it would result in a different WAC for the set of drugs for which Express Scripts is required to provide coverage under TRICARE. *Id.* Those

11

results impact not just Express Scripts but the interests of the federal government in administering the TRICARE program, which are the type of concerns that motivated Congress's creation of the federal officer removal statute. *Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (recognizing that agents through which the federal government acts must be afforded a federal forum because "if their protection must be left to the action of the State court," then "the operations of the general government may at any time be arrested at the will of one of its members").

### C. The State's Waiver Fails to Distinguish Federal and Non-Federal Relief.

Even under the district court's approach of examining only whether the State had carved out federal "relief," the State's disclaimer still fails. Effectively disentangling federal relief in this case would require some mechanism to determine the amount of alleged "inflation" of the WAC that is attributable to Express Scripts' work for TRICARE and the amount attributable to its work for non-TRICARE clients. AOB 25. Beyond the State's *ipse dixit* assertion that its disclaimer "distinctly severs relief attributable to any federal program or any federal contract," State Br. 19, the State's only substantive proposal for how to accomplish that disentanglement is for Express Scripts to "separate claims under TRICARE from claims under private contracts" and then "extract that evidence from its productions in the case." State Br. 23.

That suggestion is entirely beside the point. Limiting document productions during discovery would have no bearing on how a state court would determine what portion of the alleged "inflation" of the WAC is attributable to Express Scripts' conduct acting under a federal officer. Express Scripts' TRICARE contracts do not cease to exist if Express Scripts does not produce them in this case. The WAC will continue to be a single price that manufacturers set based on their assessment of the entire market for their drugs (including those sold to TRICARE beneficiaries), so any attempt to "distinctly sever" federal relief would need to find some way to estimate the impact of Express Scripts' TRICARE work on the WAC and exclude it. Neither the State nor the district court has posited any mechanism to do so.

The State's proposal of limited document productions would be just as unhelpful if the state trial court were to order some other form of relief. For example, the State accuses Express Scripts and other PBMs of "misrepresenting their role in the market and their motivations to consumers," State Br. 8 (citing 5-ER-983-86). If the trial court were to determine that Express Scripts made some misrepresentation to consumers and awarded a civil penalty based on that misrepresentation, the absence of discovery documents would not help the court determine and segregate the portion of those consumers that received their pharmacy benefits through a TRICARE plan. Similarly, if the trial court accepted the State's theory that Express Scripts "us[ed] [its] dominant market power to force their unaffiliated pharmacies to

13

accept unfair contractual terms," State Br. 32 (citing 2 ER-75-193), it would be impossible to determine how much of that "market power" was attributable to Express Scripts' maintenance of its negotiated pharmacy network as part of its work under TRICARE.

The State attacks a straw man when it cites *Harrison* to assert that this Court "rejected Express Scripts' argument that purportedly commingled harm, based on some federal and some non-federal action, is impossible to disentangle." State Br. 22. Express Scripts never argued that it is "impossible" to disentangle *any* commingled harm. Rather, Express Scripts argues that the State has not met its burden to show that the harm *in this case* can be disentangled. Nothing in the State's disclaimer provides any means for such disentanglement, and the remainder of the complaint demonstrates that it is impossible. *See, e.g.*, 2-ER-263 (alleging that "the WAC price remains constant regardless of who is purchasing the drugs"); 2-ER-194–95 (seeking civil penalties under Haw. Rev. Stat. § 480-3.1, which authorize civil penalties per "violation").

**D.     The States's Allegations and Disclaimer are Like Those in Other Drug Pricing Cases, not the Opioids Litigation.**

All three courts of appeals—including this Court—that have considered federal officer removal in prescription drug pricing cases have held that such cases belong in federal court. *See* AOB 30–34 (citing *California v. Caremark*, 2024 WL 3770326, at \*1; *Puerto Rico*, 119 F.4th at 190; and *West Virginia*, 140 F.4th at 194–

96). The State contends that this Court should ignore those precedents and instead look to *Harrison*—a case addressing very different allegations that Express Scripts' administration of pharmacy benefits contributed to the opioid epidemic in California. *See* State Br. 28–34. The State is wrong on both accounts.

The State's central argument for distinguishing all three drug pricing cases is that they "turned on the district court's failure to credit the defendants' theory of the case." State Br. 34; *see also id.* 31–33. But, if anything, the district court here failed to consider Express Scripts' theory of the case in an *even more* glaring way. As discussed above, the district court entirely ignored Express Scripts' arguments about the relationship between WAC and the State's claims by mischaracterizing Express Scripts' removal theory as relating only to "relief." *See* Section I.B., *supra*. And even when considering Express Scripts' arguments that non-federal and federal *relief* could not be disentangled, the district court simply credited the State's conclusion, without analysis, that those claims could be segregated. The district court never engaged with Express Scripts' arguments. The five pages of opinion cited by the State as the district court having "credited" Express Scripts' removal theory relate only to Express Scripts' argument establishing a clear causal nexus *in the absence* of the waiver. State Br. 30 (citing 1-ER-58–63). Once the district court turned to the State's waiver, it looked only to the State's characterizations of the remaining claims rather than Express Scripts' theory of defense. That is exactly the

15

type of analysis that was overturned in *California v. Caremark*, *Puerto Rico*, and *West Virginia*.

The State's few other purported distinctions with the drug pricing precedents are immaterial. First, the State notes that much of the discussion in *California v. Caremark* came in concurrence. State Br. 29. But the full panel in that case agreed to overturn the district court's remand order, and Judge Ikuta's concurrence was persuasively reasoned; even the State acknowledges that other courts of appeals have "rel[ied] heavily" on it. State Br. 33.

The State's observation that the discussion in *Puerto Rico* and *West Virginia* were mainly about Express Scripts' co-defendant, Caremark, is also of no import. Both decisions turned on similar allegations about prescription drug pricing, both assessed removal based on Caremark's involvement as a federal contractor, and both concluded that the state plaintiff's claims about rebating practices could not be disentangled from Caremark's federal work. *See Puerto Rico*, 119 F.4th at 190 (finding that Puerto Rico's allegations "necessarily target[] what Caremark alleges are 'act[s] under' a federal officer's authority"); *W. Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 194–96 (4th Cir. 2025). And neither the First nor the Fourth Circuit rejected Express Scripts' removal theory; they just did not need to reach the question once they concluded that remand was improper as to one defendant.

And the State's argument that the allegations in *California v. Caremark* "relat[ed] to relying on manufacturers' list prices," State Br. 32, is no distinction at all. Express Scripts also relies on manufacturers' list prices, including in its conduct challenged here. The State's observation that it also makes various additional allegations about "affirmative unfair and deceptive trade acts and practices," *id.*, does not make this case any different. California raised the same types of claims. Indeed, the "relying on manufacturers' list prices" language that the State quotes was simply used as a shorthand in a footnote to describe Express Scripts' removal theory, not as any indication that California's claims were limited to that topic. *Caremark*, 2024 WL 3770326, at *2 n.2 (noting that the "same analysis" Judge Ikuta discussed for Caremark also "applies to Express Scripts").

*Harrison*, which involved public nuisance allegations related to opioids, does not provide a reason for this Court to jettison those on-point precedents. Critically, the *Harrison* Court explicitly distinguished cases (like this one) challenging drug prices as "factually and legally distinct" from the opioid-related nuisance claims at issue there. *California by & through Harrison v. Express Scripts, Inc.*, 154 F.4th 1069, 1085-88 (9th Cir. 2025). The *Harrison* Court emphasized that, unlike in drug pricing cases, the State did "not challenge the price of opioid drugs," and instead alleged that opioid dispensing practices had a negative "impact" on the community. *See id.* at 1086. The *Harrison* Court also (wrongly) concluded that Express Scripts

17

waived its arguments that its negotiations with opioid manufacturers were indivisible between its federal and non-federal clients. *Id.* at 1087 n. 9. In contrast, the State here unquestionably challenges singular WAC prices that cannot be divided into federal and non-federal parts, and Express Scripts has sought removal on that basis. *See supra* p. 10. This case is therefore easily distinguishable from *Harrison* and indistinguishable from *California v. Caremark*, *Puerto Rico*, and *Hunt*.

To be sure, Express Scripts maintains that *Harrison* was wrongly decided, and it has petitioned for rehearing in that case. Reh'g Pet., *People of the State of California v. Express Scripts, Inc.*, No. 24-1972 (Oct. 27, 2025), Dkt. No 88. As Express Scripts explains in that petition, the *Harrison* Court erred by holding, without analysis, that Express Scripts' work for federal and non-federal clients was not "indivisible," thereby improperly crediting the plaintiffs' theory of the case over Express Scripts'. 154 F.4th at 1085; *see Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999). Further, the *Harrison* Court erred in holding that the federal-officer removal statute would not be implicated by state-court apportionment between federal and non-federal harm arising from a federal officer's work. 154 F.4th at 1088–89. That holding directly conflicts with the well-established principle that the federal-officer removal statute guarantees that the scope of a contractor's federal duties (and the validity of their federal defenses) will be decided in federal court. *See Willingham*, 395 U.S. at 409; *Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014). Given

that *Harrison* went out of its way to distinguish *Puerto Rico* and the other drug-pricing cases, however, those errors are immaterial to this appeal.

The Supreme Court also is simultaneously considering the appropriate nexus standard for federal officer removal in *Chevron USA Inc. v. Plaquemines Parish*, No. 24-813. If the Supreme Court sides with the majority of circuit courts that have applied a much broader nexus standard, it would invalidate this Court's reasoning in *Harrison*. Tellingly, the Solicitor General has weighed in on the side of the *Plaquemines* petitioners in support of a broader nexus standard. *See* Brief of Amicus Curiae United States, *Chevron USA v. Plaquemines Parish*, No. 24-813. In recognition that the Supreme Court may invalidate *Harrison*, this Court held further proceedings in *Harrison* in abeyance pending the outcome in *Plaquemines*. Order, *People of the State of California v. Express Scripts, Inc.*, No. 24-1972 (Oct. 27, 2025), Dkt. No 89. This Court also did so in *State of Nevada v. Optum, Inc.*, No. 25-2234, Dkt. No 59, and the Second Circuit has followed suit in *County of Westchester v. Mylan Pharmaceuticals, Inc.*, No. 24-1639 (2nd Cir.), Dkt. No 116. If this Court believes that *Harrison* may support remand in this case, Express Scripts would request that this Court do the same.

**E.      The State's Waiver in Its Second Amended Complaint Is Irrelevant Here and Is Also Insufficient.**

The State concedes that, because the District Court's decision depends on the First Amended Complaint, this Court must vacate and remand to the district court if

its decision cannot be supported based on the first amended complaint's disclaimer. State Br. 26.[1] So, this Court does not need to consider the disclaimer in the Second Amended Complaint.

In any event, the State's reframing in its Second Amended Complaint from disclaiming "relief" to disclaiming "claims" does not provide any additional guidance on how to distinguish federal and non-federal claims and continues to be contradicted by the aspects of the State's complaint that inherently implicate Express Scripts' federal work. AOB 27–30. So, while the Second Amended Complaint waiver is not squarely presented in this appeal, it would be appropriate for this Court to clarify as a general matter that such waivers are not to be credited.

## II. THE DISTRICT COURT'S NARROW "CAUSAL NEXUS" REQUIREMENT IS INCONSISTENT WITH THE FEDERAL-OFFICER REMOVAL STATUTE.

The district court's erroneous analysis of whether the State's claims are related to Express Scripts' federal work exacerbated its application of the wrong "causal nexus" standard. In 2011, section 1442(a)(1) was amended to permit removal where the party was being sued "for *or relating to* any act under color of

---

[1] Later in the same section of its brief, the State suggests that Express Scripts has failed to "preserve" arguments about the Second Amended Complaint. State Br. 28. That makes no sense since there was nothing to preserve. To the extent that the district court erroneously interprets the disclaimer in the Second Amended Complaint on remand, Express Scripts has not waived any arguments with respect to that hypothetical, future decision.

20

[federal] office." 1-ER-11 (quoting *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017)). That addition has been interpreted nearly universally— including by this Court in *DeFiore*—to have expanded federal officer removal to claims that are "connected or associated, with acts under color of federal office." *DeFiore v. SOC LLC*, 85 F.4th 546, 557 (9th Cir. 2023). But the district court refused to give effect to that amendment, instead analyzing whether the claims were causally connected to actions "directed" by the federal government. 1-ER-13.

The State first claims that the district court didn't apply that narrow standard by quoting the district court's statement that "Express Scripts has established the broader connection to or association with requirement" out of context. State Br. 37 (quoting 1-ER-59). The district court made that statement as an "alternative" finding in a footnote while explicitly applying a narrower standard. *See* 1-ER-59 n.4. And more importantly, the district court applied that alternative standard only when assessing the nexus *without* the disclaimer. That analysis was purely academic, because the State does not contest that Express Scripts could have removed under its original complaint. The issue is that the district court took an extremely narrow view of the nexus requirement when considering the State's post-disclaimer complaint, holding that there could be "no award against Express Scripts that is *based upon* services Express Scripts provided under the TRICARE Contract." 1-

ER-63.   Although the district court may have repeated the "connection to or association with" standard, it applied a much narrower standard in practice.

The district court's application of a narrow standard is apparent in its April 28, 2025 opinion rejecting Caremark's removal theory, where it misapplied this Court's decision in *Cedars-Senai* by requiring the allegations to be caused by "federally directed conduct."   1-ER-13.   Unlike the district court, *Cedars-Senai* applied that "directed" standard only in assessing the "acting under" prong of federal officer removal.   The district court here correctly held that Express Scripts was "acting under" the federal government, but then it misapplied that "directed" standard in assessing whether the State's disclaimed allegations were specifically directed by the federal government.   The State's only response on that point is its assertion that the 2025 decision "had no bearing" on Express Scripts' removal argument because it was about Caremark.   State Br. 36.   But the district court's statements in a subsequent order serve to further illustrate its improperly narrow view of the nexus requirement applied in both decisions.

In the same breath it claims the district court applied a broader standard, the State also argues that a narrower one is correct.   Specifically, the State argues that the district court properly applied *DeFiore* because, according to the State, *DeFiore* recognized that Congress's 2011 amendment "did not broaden the statute so much so as [it] br[ought] within its reach conduct that is not causally related to an act under

22

color of office." State Br. 38. That conflates two concepts—the Ninth Circuit's terminology for the nexus test (which it continues to refer to as the "causal nexus" test) and the scope of that test. This Court made clear in *DeFiore* that its "causal nexus" test "incorporate[es] the 'connected or associated with' standard reflected in Congress's 2011 amendment." In other words, this Court kept the same *name* for its nexus test from before 2011 but has made clear that what it requires is now significantly broader. Analyzing whether a claim is "connected or associated with" a defendant's conduct under a federal officer is inherently much broader than the district court's examination of whether Express Scripts' and Caremark's conduct was *directed by* a federal officer.

*Harrison* does not change that conclusion because it does not purport to modify the causal nexus standard laid out in *DeFiore*. *Harrison*, 154 F.4th at 1079 (citing *DeFiore* for the proposition that the "causal nexus" analysis "incorporat[es] the 'connected or associated with' standard"). To the extent *Harrison* misapplied that standard by requiring a causal relationship to a "federal direction," that analysis is subject to invalidation in *Plaquemines*. *See* Section I.D, *supra*. Indeed, one of the questions on which the Supreme Court granted review in *Plaquemines* is "whether a causal-nexus or contractual-direction test survives the 2011 amendment to the federal-officer removal statute." *See* Petition for Certiorari, *Plaquemines*, No. 24-813. So, if the Supreme Court sides with the majority of courts of appeals in

23

recognizing that such an exacting application of the nexus requirements is inconsistent with the 2011 amendments, it would invalidate both *Harrison* and the district court's remand order.[2]

## **CONCLUSION**

The district court's order should be reversed.

Dated: December 24, 2025          Respectfully submitted,

*s/ Jason R. Scherr*
Jason R. Scherr
Douglas A. Hastings
Lindsey T. Levy
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
jr.scherr@morganlewis.com
douglas.hastings@morganlewis.com
lindsey.levy@morganlewis.com

*Attorneys for Defendant-Appellant*
*Express Scripts, Inc.*

---

[2] Oral argument in *Plaquemines* is scheduled for January 12, and the case will be decided before the end of the Supreme Court's next term in June 2026. While Express Scripts believes that the district court's errors are readily apparent from the record and current case law, Express Scripts would not oppose holding this case in abeyance pending a decision in *Plaquemines* if this Court believes that it needs further clarity on the applicable causal nexus standard. If the Court holds this appeal in abeyance, Express Scripts proposes filing motions to govern further proceedings within 30 days after a decision in *Plaquemines*.

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s) 25-3101**

I am the attorney or self-represented party.

**This brief contains 4,729 words,** including zero words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Jason R. Scherr*     **Date** December 24, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*